```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON

GROVER E. VANCE,

     Plaintiff,

v.                                    CASE NO. 2:05-cv-00750

JO ANNE BARNHART,
Commissioner of Social Security,

     Defendant.
```

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court is Plaintiff's Motion for Judgment on the Pleadings. In addition, Defendant filed a Brief in Support of Judgment on the Pleadings.

Plaintiff, Grover Elmer Vance (hereinafter referred to as "Claimant"), filed an application for DIB on December 19, 2003, alleging disability as of July 28, 2003, due to heart problems, left eye blindness, breathing problems, high blood pressure and neck and shoulder pain. (Tr. at 72-75, 86.) The claim was denied

initially and upon reconsideration. (Tr. at 45-49, 53-55.) On May 14, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 56.) The hearing was held on July 11, 2005, before the Honorable D. D. Daugherty. (Tr. at 262-72.) By decision dated August 5, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-23.) On September 1, 2005, the Appeals Council considered additional evidence from the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 4-6.) On September 12, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2005). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2005). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

substantial gainful activity since the alleged onset date. (Tr. at 17.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of coronary artery disease with subsequent coronary artery bypass grafting and left eye blindness. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 20.) As a result, Claimant cannot return to his past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as cashier, mail clerk, dispatcher and order clerk, which exist in significant numbers in the national economy. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing. (Tr. at 264.) Claimant has a high school education. (Tr. at 271.) In the past, he worked as a welder and press operator. (Tr. at 265.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

The record includes treatment notes from Dale B. Lilly, O.D., M.D. (Tr. at 138-42.)

On July 28, 2003, Claimant underwent an exercise Cardiolite stress test that was abnormal and showed severe inferolateral reversible defect consistent with ischemia. Claimant's ejection

fraction was 63 percent. (Tr. at 143.)

On July 31, 2003, Claimant underwent cardiac catheterization and coronary artery bypass grafting by Edward R. Setser, M.D. His final diagnosis was atherosclerotic coronary artery disease and history of gastroesophageal reflux disease. (Tr. at 145.)

On September 11, 2003, Claimant underwent coronary angiography. The left main was 80 percent, the mid right coronary artery was 80 percent. LIMA to the LAD was widely patent with no evidence of stenosis. Right internal mammary artery graft had never matured and had a string sign distally and was barely seen on retrograde flow. Paulette S. Wehner, M.D. noted successful angioplasty and stent placement to the mid/right coronary artery lesion with nonmaturing REMA; pre-procedure stenosis 80-90 percent, post-procedure stenosis 0 percent. (Tr. at 157.)

The record includes treatment notes from University Cardiovascular Services dated July 30, 2003, through December 31, 2003. On September 3, 2003, Shewit Weldetensae, M.D. noted that Claimant had recently been discharged after having coronary artery bypass graft by Dr. Setser on August 1, 2003. Claimant reported chest pain, pressure-like, radiating to his left arm. Dr. Weldetensae continued aspirin, statin and Lisinopril. Claimant would undergo stress cardiolite on September 9, 2003. (Tr. at 168.) On October 22, 2003, Dr. Weldetensae noted the results of Claimant's left heart catheterization and that he had been doing

6

well since the surgery.  Claimant reported noticing "a significant change after angioplasty and stent placement." (Tr. at 166.) Claimant had no chest or arm pain, but reported constant shooting pain in his chest wall and chest soreness. (Tr. at 166.) Dr. Weldetensae counseled Claimant about staying active. (Tr. at 166.) On December 31, 2003, Dr. Weldetensae noted Claimant complained of chest pain that he described as "soreness and pressure." (Tr. at 162.) Claimant's pain was not relieved by Nitroglycerin, but was relieved by Lortab. (Tr. at 162.) Dr. Weldetensae felt that Claimant's pain was musculoskeletal in origin. He instructed Claimant to see Dr. Setser for follow-up. (Tr. at 162.)

On January 28, 2004, Joseph J. Koenigsmark, D.O. examined Claimant at the request of the State disability determination service. Claimant reported shortness of breath and pain and tenderness related to his recent heart surgeries. Claimant also reported back pain. (Tr. at 174.) Dr. Koenigsmark opined that "he is currently only about 4-5 months status post surgery at which time in many instances will still cause the claimant to have pain and will still need to have cardiac rehab. He would have difficulty with certain types of lifting and carrying but this would just be due to the postoperative state. It should not be permanent. His ability to sit and stand would not be impaired." (Tr. at 177.) In addition, Dr. Koenigsmark reported that Claimant had "good grip and good gross manipulation. There was no need for

7

the use of an assistive device. The claimant had no evidence of motor, sensory, or reflex abnormalities." (Tr. at 177.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on February 11, 2004, and opined that Claimant could perform light level work, reduced by an occasional ability to climb, balance, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation and hazards. (Tr. at 184-91.)

The record includes treatment notes and other evidence from Lincoln Primary Care Center dated June 23, 1994, through March 3, 2004. (Tr. at 192-206.) Claimant injured his shoulder on the job in September of 2001. (Tr. at 203.) Claimant reported shortness of breath in July of 2003. On December 8, 2003, when Claimant was status post the two heart procedures, he reported continued chest wall discomfort. Claimant had been unable to work, lift or drive due to pain. (Tr. at 196.) On February 5, 2004, Gregory A. Elkins, M.D. completed a form on which he indicated that Claimant could not work due to heart disease. The first page of the form is not included in the record. Dr. Elkins stated that he "doubt[s] he will ever return to work force. Need ongoing medical care." (Tr. at 194.) On March 4, 2004, Claimant reported continued chest pain. (Tr. at 192.)

On April 21, 2004, a State agency medical source completed a

Psychiatric Review Technique form and opined that Claimant has no medically determinable mental impairment.  (Tr. at 207-19.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on April 29, 2004, and opined that Claimant could perform light level work, reduced by an occasional ability to climb, balance, stoop, kneel, crouch and crawl and a limitation in depth perception due to blindness in the left eye. (Tr. at 221-28.)

The record includes treatment notes from Edward R. Setser, M.D. dated August 20, 2003, through July 21, 2004.  (Tr. at 229-47.)  On August 30, 2003, Dr. Setser noted Claimant was status post bilateral internal mammary artery bypass grafting with insitu right internal mammary artery to the left anterior descending coronary artery.  Claimant was walking approximately one mile twice daily. Overall, Dr. Setser noted Claimant appeared to be doing quite well, although he reported occasional, poorly defined left shoulder and arm tingling and discomfort.  Dr. Setser scheduled treadmill stress testing.  (Tr. at 246.)  Claimant underwent a treadmill stress test and myocardial perfusion scan on September 9, 2003.  (Tr. at 241-42.)  The results were abnormal, and Claimant was referred immediately for cardiac catheterization.  (Tr. at 242.)  On September 24, 2003, Dr. Setser noted that Claimant underwent cardiac catheterization by Dr. Wehner, which showed a patent left internal mammary graft.  However, there was minimal flow in the

right internal mammary graft to the right coronary artery system. Claimant underwent successful percutaneous intervention with Cypher stent placement to the mid-right coronary artery. Claimant was doing well since the surgery, and his incisions were healing nicely. (Tr. at 240.) On January 21, 2004, Claimant returned complaining of persistent sternal discomfort following his second surgery. Claimant described it "as if there is a 'weight' on the right side of his chest." (Tr. at 239.) Claimant reported that any significant upper body exertion is uncomfortable. On examination, the incision was healed and the sternum was grossly stable. There was no gross instability by palpation. "CXR shows the sternal wires to be intact and the sternum to be grossly aligned." Dr. Setser ordered a CT scan of the chest. (Tr. at 239.)

Chest x-rays on January 21, 2004, demonstrated stable midline sternotomy surgery with no complicating features. (Tr. at 238.) A CT scan on the same date identified no abnormality with the sternum. (Tr. at 236.) On February 11, 2004, Dr. Setser noted that Claimant reported no significant change with the addition of Bextra. Dr. Setser noted the normal CT scan and indicated it showed an appropriately healing sternum. Dr. Setser prescribed Prednisone and Zoloft. (Tr. at 235.) On February 25, 2004, Claimant reported to Dr. Setser that he experienced temporary relief with the Prednisone. Dr. Setser increased Claimant's Zoloft

and prescribed Neurontin.  He also referred Claimant to a pain management clinic.  (Tr. at 234.)  On March 10, 2004, Claimant reported some relief with Neurontin.  Claimant told Dr. Setser his activity level had increased.  Claimant appeared to be doing better overall.  Dr. Setser prescribed a chest support.  (Tr. at 233.)  On April 14, 2004, Claimant reported "significant relief" with the chest support device.  Dr. Setser also refilled Claimant's Lortab.  Claimant reported he was considering going turkey hunting at the end of the month.  (Tr. at 232.)  On July 14, 2004, Dr. Setser noted that Claimant had obtained some symptomatic relief from the chest support device, but that he continued to have pain after any activity requiring upper body exertion.  Upon examination, there was no sternal mobility detectable.  There was tenderness to palpation along the entire length of the incision.  There is no erythema or induration.  Dr. Setser recommended evaluation at a pain management clinic.  Dr. Setser repeated the chest CT scan.  (Tr. at 230.)  A CT scan on July 21, 2004, showed a stable exam with multiple, nonspecific, noncalcified bilateral lung nodules.  (Tr. at 237.)

   The record includes additional treatment notes from Lincoln Primary Care Center dated June 28, 2004, and August 4, 2004.  (Tr. at 257.)

   On October 11, 2004, David Caraway, M.D. at St. Mary's Medical Center, Pain Relief Center, examined Claimant.  Claimant reported

continuing complaints of chest wall pain, mostly at the sternum associated with activity. Claimant reported that when he lays flat on his back or when he is relatively sedentary, the pain is minimal, but when he attempts to pursue his pre-surgical activities, he has a great deal of trouble. On examination, Claimant had minimal tenderness to palpation. Claimant reported that the chest support helped "a little." (Tr. at 259.) Claimant reported relief from medication. Dr. Caraway prescribed Duragesic patches. Claimant indicated he had been prescribed Wellbutrin. Dr. Caraway felt this was an excellent choice and would provide some improvement in Claimant's depression. (Tr. at 259.) On November 17, 2004, Dr. Caraway noted that Claimant was doing about the same, and continued to complain of sternal and substernal pain of noncardiac origin, status post sternotomy. Claimant reported the Duragesic patches did not help. Dr. Caraway prescribed a trial of Avinza. (Tr. at 258.)

Evidence Submitted to the Appeals Council

By letter dated April 14, 2004, Dr. Setser wrote that Claimant was being treated for "severe chronic chest wall pain status post sternotomy. He has been showing improvement, although current degree of discomfort precludes return to work. We are going to reassess his condition in three months." (Tr. at 9.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not

supported by substantial evidence because (1) the ALJ erred in his pain and credibility analysis; (2) Claimant's medication treatment precludes him from working a full eight-hour day; and (3) the ALJ erred in ignoring the opinions of Dr. Elkins and Dr. Setser. (Pl.'s Br. at 3-8.)

The Commissioner argues that (1) substantial evidence supports the ALJ's decision that Claimant was not disabled; (2) the ALJ properly assessed Claimant's pain and credibility; (3) the ALJ's residual functional capacity finding is supported by substantial evidence; and (4) the ALJ properly weighed the medical evidence of record. (Def.'s Br. at 9-16.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence. First, the ALJ's decision does not contain an adequate explanation of the weight afforded the medical evidence of record from certain medical sources of record.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2005). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not

13

inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2005).

Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary

14

of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ does not provide an adequate explanation as to the weight afforded evidence from the various medical sources of record. The ALJ did state that he adopted the opinions of the State agency medical sources that Claimant could perform light work (Tr. at 20), but the ALJ apparently ignored some of the remaining limitations found by the State agency medical source without explanation. The State agency medical source also opined that Claimant should avoid exposure to extreme cold, fumes, odors, gases, poor ventilation and hazards, but these were not included in the residual functional capacity finding.

In addition, although the State agency medical source opined that Claimant had limited depth perception in the left eye, a finding adopted by the ALJ in his residual functional capacity finding, the ALJ did not include this limitation in the hypothetical question. In his decision, the ALJ found that "[b]ecause of blindness in his left eye, he has limited depth perception." (Tr. at 20.) In the hypothetical question to the vocational expert, the ALJ included the limitation only that

15

Claimant has "loss of vision in one eye." (Tr. at 271.) Because the ALJ omitted the limitation of depth perception from his hypothetical question, the court also proposes that the presiding District Judge find that the ALJ's hypothetical question did not include all of Claimant's limitations. See <u>Walker v. Bowen</u>, 889 F.2d 47, 51 (4th Cir. 1989) (To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.).

Furthermore, the ALJ's decision provides little in the way of discussion related to the evidence from Claimant's treating sources, particularly Dr. Setser and Dr. Caraway. While the ALJ notes in his credibility finding that treatment notes from Dr. Setser indicated on April 14, 2004, that Claimant was considering going turkey hunting at the end of the month, Dr. Setser also referred Claimant for pain management to Dr. Caraway. Dr. Caraway prescribed a variety of treatments to address Claimant's pain. Because there is no real discussion in the ALJ's decision, particularly his pain and credibility analysis, of the evidence from Dr. Setser in particular, whose treatment notes provide a longitudinal view of Claimant's struggles related to his chest pain following two surgeries, the court must recommend remand.

In addition, in evidence submitted to the Appeals Council, Dr. Setser opined on April 14, 2004, that Claimant cannot work because

16

of his pain.  Clearly, the ALJ did not have the benefit of this evidence.  However, because the Appeals Council specifically incorporated the evidence from Dr. Setser into the administrative record, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence.  Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).  Admittedly, Dr. Setser's April 14, 2004, letter could be viewed as inconsistent with the April 14, 2004, treatment note.  However, when Dr. Setser's treatment notes are viewed as a whole, the ALJ's decision could reasonably have been different had he considered the new evidence.  At the very least, Dr. Setser's opinion further necessitates some explanation from the ALJ about the weight afforded his opinion.  Finally, as Claimant points out, the ALJ never acknowledged the opinion of Dr. Elkins or explained the weight afforded thereto.

Next, the ALJ's pain and credibility findings are not consistent with the applicable regulation, case law and social security ruling ("SSR") and are not supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2005); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  The ALJ determined that Claimant had underlying impairments established by objective medical evidence that could reasonably cause the symptoms alleged. (Tr. at 18.)  Indeed, Claimant's case is one that hinges on the credibility of his subjective complaints

of chest pain following his surgeries. After considering the factors identified in the regulation and SSR 96-7p, the ALJ determined that Claimant's credibility was "only fair." (Tr. at 20.) The ALJ explained that early on in his claim, Claimant listed significant activities of daily living, but later testified he is unable to do such things as hunting and fishing. In addition, the ALJ stated that Claimant testified he has

> difficulty sleeping, having to get up frequently throughout the night to 'stir around a little' to ease the pain. However, he further testified he does not take naps during the day. Treatment notes of Dr. Setser, dated April 14, 2004, indicate the claimant was considering going turkey hunting at the end of the month, giving rise to the question of how limited the claimant is since his coronary artery bypass grafting (Exhibit 12F). Given all of the above, the undersigned concludes that the claimant's allegations of disabling heart and vision problems are deemed excessive, not fully credible and are treated accordingly.

(Tr. at 20.)

In a case such as Claimant's, where the credibility of Claimant's subjective complaints is a central issue, the ALJ's reasons for rejecting Claimant's subjective complaints are not supported by substantial evidence. The ALJ's reasons for rejecting Claimant's credibility skirt the real issue of why Claimant's chest pain is not credible such that it imposes limitations in his ability to lift and maneuver his upper body. As discussed further above, in addition to the April 14, 2004, treatment note, Dr. Setser also stated on this same date, in evidence before the Appeals Council, that Claimant could not return to work. Further,

if Claimant's credibility is only fair, that would suggest the ALJ gave some credit to his subjective complaints, but it is not entirely clear from his decision whether such a finding was factored into the residual functional capacity finding.

In short, Claimant's case is a close one.  If Claimant were found capable of sedentary work, at age 50, he would be disabled pursuant to the Medical-Vocational Guidelines, Rule 201.14.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14 (2005).  The ALJ's findings as to the weight afforded the medical evidence of record and Claimant's credibility about his subjective complaints are crucial determinations.  Because it does not appear the ALJ fully considered the medical evidence of record or Claimant's subjective complaints of pain, the court proposes that the presiding District Judge remand this matter.

The court need not address the remaining arguments raised by the parties, as they can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge GRANT the Plaintiff's Motion for Judgment on the Pleadings to the extent he seeks remand and otherwise DENY Plaintiff's Motion, DENY judgment in favor of Defendant, REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

   June 20, 2006  
       Date

*Mary E. Stanley*  
Mary E. Stanley  
United States Magistrate Judge